Good morning. Ryan Squire for Stuart Title of California. May it please the Court. I would request five minutes on my rebuttal, if that's okay. Okay. Now, please keep track of your time. We'll try to help you. I will. Thank you. This case boils down to the following. The Fidelity Group of Defendants is one of the largest conglomerates of title insurance and escrow services in the country. Rather than expending their own time and resources to develop escrow forms and purchase contracts for handling escrow services for patriot homes, Fidelity simply took and pirated Stuart Title's contracts, contracts that had been authored by one of its employees going back to the 1950s, and Fidelity replaced the Stuart's name and masthead with Fidelity's own. And that's really what this whole case boils down to in terms of the overall crux of the situation. Now, the district court granted summary judgment to the defendants in this case, and it is Stuart Title's position that summary judgment should have been granted to Stuart on its cross-missions. At the very least, there were tribal issues of fact on the issues that were presented before the court. The first and primary issue is the ownership of the copyrights. And it is the — it is a fact in this case that Southern County's escrow orally transferred its rights in its escrow forms, which had been created by Ed Neal, who founded Southern County Escrow, and had moved over to Stuart. Southern County's transferred those rights orally to Stuart Title. They did so as part of the winding down of their affairs, that is, as part of the winding down of Southern County's affairs. In fact, they also gave Stuart Title all of their outstanding escrows. And Mr. Neal's testimony is clear at — well, in several instances, but also in the record at SCR 55 through 57, that Stuart Title was given the right to use these forms, the copyright. And that was certainly Mr. Neal's understanding. In fact, he testified that he had conversations to that effect with Peter Lowe, who was a representative at the time of General Bank and Southern County's escrow. And so the notion here that the appellees attempt to pray for the Court that there was no assignment is simply mistaken. Now, that assignment — How long did it take before this conversation was reduced to writing? Well, Your Honor, the — the writing came about during the course of this litigation, in fact. The oral assignment had occurred back in 1999. The written memorialization and confirmation of it came about during the course of the litigation in 2006. Am I not right, though, that the assignment of the — of the escrow files was in writing? Yes, that's correct. It was. The assignment of the escrow files was in writing. Curious that there was nothing contemporaneous said about the copyright interest? Well, Your Honor, the — the understanding, at least, of Mr. Neal in speaking with Peter Lowe, and certainly the confirmation of ratification subsequently confirms this, the understanding of the parties at the time was that Stuart Title was going to be taking over, essentially, the escrow operations, the escrow business that — that Southern County's escrow had been handling. And so the forms were going back to Mr. Neal. And he's the one that created them in the first place. It so happened that he was at Stuart Title when they were transferred. But they were going back to the person that had created them in the first instance. And so, yes, the contract in 1999, the written contract, does not state that there's an assignment of intellectual property and copyrights and whatnot. But that was the understanding of the parties at the time. And that's been subsequently ratified and confirmed in writing. And I — But you said that writing didn't — writing didn't come along until this litigation. Are you talking about the post-discovery recital by — was it the official of Cathy? That's correct. That's correct, Your Honor. The — Awfully late in the day. Judge Gould. You can finish with — you can answer Judge Pollack first. But I thought I would let you know my concern. You know, if there was an assignment that was produced during the discovery, I can see the precedent. You can have such a confirmation. But what bothers me is that this is coming up after the close of discovery. So doesn't Stewart have to make a prima facie presentation with admissible evidence that there was an assignment? And if the confirmation was excluded as untimely, then how did they get there? Well, in answer to the last question, just briefly, we don't know that it was excluded as untimely. The district court did not indicate that it was excluding the document as untimely. In fact, the order that was signed by the court was an order that was adopted verbatim and had been submitted prior — had been lodged with the court prior to the defendant or the plaintiff, Stewart Title, submitting its opposition. So the court's order necessarily did not encompass the — a notion that the written assignment was being excluded. But Stewart Title has put on evidence through deposition of Mr. Neal that the defendants here took over the course of two days that there was, in fact, an oral assignment that went back into — I mean, I agree — I agree with that, and I agree it could be confirmed after the fact. But it still seems to me that the court has to admit evidence of a confirmatory writing. And since I don't know if that happened here, it seemed to me that we would have to remand, you know, on whether the assignment confirmation was excluded or was admitted, and also whether Caffey, you know, had the basis to confirm, I guess, a successor. And I certainly understand Your Honor's concern. And certainly, if anything, if there is a concern, then it would be our view that remand would be appropriate to address that issue. How long did you have for discovery? Or how long did the Bicentennial parties have for discovery? I was just going to point that out. I think it was 53 days or 43 — I think it was 53 days. From — we had a — the case was filed. We made our first appearances on a motion for judgment on the pleadings. And at that hearing, the court said there's going to be a discovery cutoff in 53 days. It didn't use those terms, but it said on March 30th. It was only 53 days or so from when we had made our first appearance before the court in that case. So until that time, we didn't have any idea that there would be such a truncated discovery order implemented. But I would also point out that in the Great Southern Homes case, it's a case that's very similar to the situation that we have here, which is the defendant there — or the plaintiff, rather, submitted a written memorialization, a written confirmation after the summary judgment motion had been filed by the defendant. And the courts there said that was all right, because the written memorialization validates the prior oral assignment, ab initio. And so in this case, it's also the position of Stuart Title that the defendants do not have the — the standing to challenge whether or not there was an assignment in the first instance. And so, yes, we agree that remand would be appropriate to analyze those factual issues if the court is so inclined. However, we don't know that the court needs to get there, because we believe that the assignment is sufficient. Just to flesh out that argument to make sure the other side knows what it's responding to, because this is an argument that I say to me seemed fairly persuasive, and that is if there's a dispute between an asinore and an assinee as to whether or not a copyright has been assigned, well, then I want to see the writing, or at least I want to see the confirmatory writing. But in the absence of a dispute as to whether or not there's a proper assignment between the asinore and the ostensible assinee, when in fact it's an outsider to that transaction who's challenging, I don't — I don't see the need for the — to go into this. I mean, the asinore and the assinee are not a dispute on this question. That's right. There is no dispute. There is absolutely no evidence of any dispute, because there is no dispute. In fact, the evidence, the contemporaneous evidence in 1999 corroborates that there's no dispute, because all of the escrow files were transferred to escrow, to Stewart-Title. The rights to use the forms were given back to Mr. Neal. He was the one that created them in the first place, and he had moved over to Stewart-Title. And so that contemporaneous evidence corroborates the notion that there is no dispute. And I should mention one other fact. I know the Court is aware of this. Southern Counties was winding down its operations and so had no further need for this. So the notion that there might be some dispute is really something that's out there in the ether, and there's absolutely no evidence presented by the defendants, because there is no evidence of any dispute. And so the defendants should not be able to challenge this argument. Well, let's assume for a moment that Judge Fletcher's suggestion that the standing problem is a persuasive one. I don't mean to suggest a disagreement with Judge Fletcher, but at least we'll have to think about that. Let's assume that Fidelity has no standing to question whether there's been an assignment. It still is your burden to demonstrate affirmatively that there was ownership of the copyright. And you think that's been done? I guess this really follows from Judge Gould's questions. Was that really done just by the rather wobbly deposition testimony of Mr. Neal? Well, I think that it is, Your Honor. And if we look at the Eden case, the Eden case talks about an informal understanding. And the Eden case says that's all that's really needed. We don't have to have two business people, one looking at the other, saying, I am assigning you the copyrights. That's not what's required. Eden says all we need is an informal understanding between the parties that that's what was happening. And I think the evidence, contemporaneous evidence, corroborates that notion. And Mr. Neal has testified. In fact, he didn't just say I spoke with somebody at Southern Counties. He said I spoke with Peter Lowe. That's the person with whom I spoke. And I should point out, just for the Court's benefit, that we had a very truncated discovery period. The defendants were afforded an additional month, sua sponte, to address all of the issues that were in our opposition and never made a request for further discovery. So the notion that they were somehow prejudiced by this particular document, really it falls on deaf ears because they never requested the right to be able to address it. And beyond that, they knew before we filed the opposition about the assignment and they knew about Mr. Lowe and they had full opportunity to conduct discovery. And they didn't do so because they didn't want to discover the truth, which is that there, in fact, is an assignment. Do you think an informal understanding is the proper description of Mr. Neal's testimony or perhaps an informal ambiguity? Well, Mr. Neal testifies clearly when he was asked, when he asked a direct question, were the copyrights assigned. And he says, yes, they were given to us, yes. That's exactly what he says. And he says in his, that's in his deposition. Then in his declaration he says, I had conversations with General Bank to this effect. This was my understanding. This is the process how it was accomplished. And so the defendants here cherry pick out of context one of Mr. Neal's responses to the same type of question that's repeated over and over again. And the question is, did General, it's overbroad, did Southern County ever assign any of its copyrights to anybody? And Mr. Neal says no. Well, I don't know exactly what that question means, but when it's asked in such a broad fashion, he's then asked specifically, did SCE assign these rights to Stuart Title? And he says yes. So under common principles of logic, one would think that the specific question should govern over the broad question, which is broad as to time, could be interpreted in any number of ways. It could be interpreted as at any point in time when, when Southern County's escrow was conducting its escrow affairs. Did it ever assign its rights to anybody? Well, the answer is no. But when asked a specific question about whether or not they were assigned to Stuart Title, the question is yes, they were. And he says that repeatedly. Okay. So counsel, Judge Gould again, you know, that may all be so, and that would be evidence of assignment, of an oral assignment. But doesn't the statute require for ownership that you'd have to show a written assignment, and then the case law says the writing can be an after-the-fact confirmation. But if the confirmation was disregarded because it was untimely or after the close of discovery, then isn't your theory in jeopardy? And don't we have to pin that down, I guess, is my question. Well, in response to that. The district court doesn't give us much help here because it doesn't give any reasoning on this point. Well, that's right. There is no reasoning. So I would argue that the court did not exercise its discretion to exclude the document. It didn't abuse its discretion. Well, the court didn't exercise its discretion. There's no guidance from the court. The order that the judge signed was submitted and then adopted subsequently verbatim. It was submitted prior to. That's the standard. We might have to say that some district courts never exercise discretion because they never tell us their reasons. Understood. But here, I guess the question is, did the court exercise its discretion? And I would say that even if the court did exercise its discretion to exclude the document, that that would be an abuse of discretion, and that the court need not necessarily remand that issue for further proceedings because there's no prejudice to the other side. They knew about the assignment. There is no requirement in the Copyright Act for a written assignment. And that is, I think, the notion that the district court was operating, an erroneous view, that a written assignment is required. And it simply is not the case. All that is required is a note or memorandum of a transfer. I think the effects case says that it doesn't have to be the Magna Carta. A one-line pro forma statement will suffice. And so the assignment took place back in 1999. That's when the assignment took place. The question is, has it been memorialized in writing in some fashion? And the answer is yes. Certainly the ratification and confirmation is far more, it's not the Magna Carta, but it's far more than a one-line pro forma statement. Well, there are a number of other issues in this matter, and I see that I'm running down on my time here. Is there anything that I can answer for the Court at this point? Why don't you save your time for response. All right. Let's hear from the other side. All right. And then you'll have some guidance as to what you might want to say or not say. Thank you, Your Honor. Good morning, Your Honors. May it please the Court, Nabil Abbasal on behalf of the Fidelity Defendants and their affilies. Your Honor, what you've heard today is a continuance of a recreation of the truth facts of this case and also what people testified and said in their declarations on behalf of Stewart. And this is why this case is so extraordinary, that it deserves attorney's and costs to be awarded to Fidelity. You've heard things today that were repeated in the trial court that absolutely have no foundation in fact or the record. And let me walk you through it, and then I will deal with the law on retroactive writings in the Ninth Circuit, which I will argue says that a retroactive writing, even if it does confirm an oral assignment, should be disregarded. And in this case, Your Honors, as I will show you, the retroactive writing does not confirm an oral assignment or any other type of assignment. So let me walk you through. The history of this case is sordid, to say the least. Did you say sordid? Sordid. That's what I said. And I want to walk you through it because it's important. That makes it more exciting than I've gotten from the brief. Yeah. It's exciting. It is exciting. The copyright registrations in this case in 1998 clearly were not mentioned in the complaint in this case. The copyright registrations at issue in this case are 2003 copyright registrations. That's what we're being sued on, just the 2003 copyright registrations. It turns out, it's undisputed in this case, that the 2003 forms were When you say wholesale copies, do you mean they were changed in no respect whatsoever? They were trivially changed. Only 11 sentences were changed. Is that from the 98 or the 99 form? Between the 2003 and the 98 forms. Okay? So everybody agrees that for Stewart to proceed with this case, they have to show ownership not only of the 2003 copyrights, but the 98 copyrights. Okay? Did your opponents agree to that? Yes. That's conceded. Now, the 2003 copyright registrations make no mention of the 98 registrations at all, even though they're based on them. And even though Ed Neal said he copied virtually the entirety of the 98 forms in the 2003 forms. Now, his explanation for that, and we brought fraud on the copyright affirmative defenses. His explanation for that, I called the Copyright Office, and I'm a layperson, and they told me I didn't have to check the box that says these are derivative forms or these forms are based upon the 98 forms. Okay. Mr. Neal is a layperson, even though he was designated as the person most knowledgeable about the ownership of the copyrights in the case. What about the complaint in this case? What about the lawyers who are supposed to do simple due diligence, and before they file a complaint in federal court to check out the chain of title of the copyrights that they're suing on, did they ask Mr. Neal whether the 2003 forms were based on any other forms? Did they ask Mr. Neal whether the 2003 forms were either substantially or in Did they ask Mr. Neal whether his copyright in any way related to the dozens of copyright registrations that he'd been getting at least since the 70s? The complaint says it all. It only alleges the following, that in their suing us for the 2003 forms and that they own all rights, title, and interests in the 2003 forms. No mention of the 98 forms. No mention that there are copyrights that they're relying on that are owned by a totally separate entity. Now, I get the narrative. And therefore? And therefore, I want you to see what happens when we take the deposition of Mr. Neal. Okay, now we're beyond the complaint stage. They're preparing him for deposition. He's the guy they designate as the person most knowledgeable. And we ask him flat out, did Southern County's escrow assign its copyrights to General Bank? No. Well, wasn't General Bank the one that bought out Southern County's escrow? Answer, General Bank purchased the stock in Southern County's escrow. Southern County's became a wholly owned subsidiary. The Southern County's copyright ran to Southern County's, as I recollect, not General Bank. So he's saying the copyrights are in Southern County's escrow. So read that last answer again, I'm sorry. Sure. This is Mr. Neal. Answer, General Bank purchased the stock in Southern County's escrow. Southern County's became a wholly owned subsidiary. Yes. The Southern County's copyright ran to Southern County's, as I recollect, not General Bank. And then the next question following that is, did Southern County's escrow ever assign any of its copyrights to anyone? Answer, no. The follow-up question to that was, has Stewart Title of California obtained assignments of copyrights from anybody, to the best of your knowledge, relating to any forms? Answer, I don't know. Okay? That frames it. That should be the end of the case, because Mr. Neal, the person most likely to be held accountable for that assignment, no transfer. However, they take him out. They do whatever lawyers do to their witness. And what happens after that is a series of events that require sanctions at the least. And I'll tell you why. Because after that testimony, he does come back and testify that there was some sort of permission given to them to use the escrow files and the forms within the escrow files that were existing at the time. Okay? He doesn't testify that there was a transfer of copyrights. He doesn't testify there was an assignment of copyrights. Indeed, what he says in his declaration in opposition to our summary judgment motion, this is after the deposition now, after discovery cutoff. Look at what he says in his declaration, ER 440, paragraph 8. And you tell me whether there he talks about any sort of transfer. This is what he says. After I left Southern County's escrow and joined Stuart Title, Stuart Title took over escrows from Southern County's escrow because Southern County's escrow was winding down its operations. Southern County's transferred all of its outstanding escrows to Stuart Title. Escrows. Nothing about copyright. The actual files. And I'm going to get to the actual written agreement that transferred the actual files, not copyrights, and then see what he says. Attached here to, as Exhibit 32, is a true and correct copy of the agreement between Stuart Title and Southern County's escrow. The agreement does not transfer any copyrights, doesn't talk about IP, intellectual property, at all. All it says is we're giving you these existing files, and this is how we're going to split the money on these existing files. Those files have forms in them, but there's nothing about an assignment of copyrights. Now let's read on. As part of the transfer, I understood Southern County's escrow was assigning all of its intellectual property rights in the numerous purchase agreements, escrow transactions, and other forms I had created while Southern County's escrows, as I had conversations with General Bank to this effect. What is Mr. Neal saying there? Well, why doesn't that create an issue of fact? Why doesn't that create an issue of fact whether there was an assignment? Because he never says that there was a transfer or an assignment. What he is saying, and, Your Honor, I'm going to show you in the actual ratification and confirmation, all he is saying, just like Eddie Chang of Cathay Bank says in the purported ratification and confirmation, is I am interpreting the underlying agreement. He is giving us a legal opinion about what the intent of the underlying agreement is. He is not saying that somebody at Southern County's escrow and General Bank agreed that Southern County's escrow was going to transfer its copyrights to Stuart. He is not saying that. What he's saying is this is what I interpret from the underlying agreement. That's why. So what he says, and let me finish the paragraph, attached as Exhibit 32A is the ratification and confirmation, which I'm going to read to you, is a true and correct copy of a confirmation and ratification agreement memorializing the assignment. Okay? So we turn to the confirmation and ratification. Several things that take this ratification and confirmation out of all case law that talks about oral assignments, transfers, and transferees. Let me tell you what they are. Number one, the confirmation and ratification does not confirm and ratify an oral anything, not a transfer or an assignment. Number two, it is not executed by the original ASINOR, Southern County's escrow, or anybody related to Southern County's escrow. It's executed by someone purporting to represent Cathay Bank. Cathay Bank is twice removed from Southern County's escrow. The original agreement transferring the escrow files is signed by Southern County's escrow and Stuart. The ratification and confirmation, which is signed six years no, I'm sorry, seven years later, after the litigation commences, after the discovery cutoff, after it should be excluded automatically from anything to do with our case and in opposition to our summary judgment, this is what it says. It says, Cathay, not Southern County's escrow, hereby confirms that by entering into the escrow transfer agreement, it was Southern County's intention to sign to Stuart Title without recourse, Southern County's intellectual property rights, including copyrights in and to Southern County's escrow agreements and forms. And it goes on. Okay, I'm reading to you the relevant part. So if you read this ratification and confirmation, it's commenting on the underlying agreement and it's saying this other entity, which we hear is dissolved, but there's no evidence that's dissolved, this other entity, Southern County's escrow, its intent under the written agreement was to transfer copyrights. So you turn to the written agreement and it says in connection, this is at ER-448, in Southern County's desires to transfer, sell, and assign its interest in escrow files, which are currently being handled by it to Stuart, with the express understanding that Stuart shall step into the position of escrow holder in such files. That's all the underlying agreement says. And then it goes on and it splits the monies for each of the files that are being transferred. Why a very interesting narrative that you've given us, but why doesn't it leave essentially unanswered Judge Gould's question as to whether there aren't issues of fact to be explored? Certainly the narrative as you've given it suggests that Stuart's position may be a weak one with respect to whether there's been an assignment. But as all mystery cleared up, given the paucity of findings by the district court, we're left a little bit at large. Please let me address the law now. Under 204A, they have the burden, not us, of showing that they are the owners of the copyrights at issue. The copyrights at issue here are the 98 copyrights. They're not even alleged in the complaint. And Stuart never sought leave to amend its complaint to even allege those 98 copyrights. That's number one. Number two, there's a series of cases in the Ninth Circuit that I'd like to address now. Effects, Kronigsberg, and Magnuson. And I'd like to turn to those cases. Effects is a case that was authored by Judge Kaczynski. And in that case, he flat out says, unless you have a writing that is contemporaneous, with the purported oral assignment or whatever it is, that writing is insufficient to memorialize or confirm or ratify any oral transfer. Flat out, that's what effects says. Is your discussion of the law also going to include a response to what I understood to be Judge Fletcher's concern, as to whether you have standing to contest the issue of ownership? We have standing to contest ownership because they have the burden. And to bring a copyright infringement action under 204A, you have to have copyright ownership. You have to prove it. And secondly, you have to show infringement, which we'll get to in a little bit, hopefully. Here, they cannot show that they own the copyrights at issue. That's their burden. They haven't even alleged the copyrights at issue, which is in the complaint. In Kronigsberg, another Ninth Circuit case, 1994. Again, the court holds that where you have a supposed oral transfer, and then you have a retroactive writing, later on, that retroactive writing is ineffective, because under 204A, you not only have to have a writing, but as you, Your Honor, said earlier, the writing should be somewhat contemporaneous. Especially here, where you're dealing with an entity that's no longer amongst us. There is no showing that Southern County's escrow agrees to this lawsuit. There's no showing that Stewart tried to bring him in as a plaintiff, as in the Eden case. And all the cases that they cite, you know, for a supposed retroactive confirmation, those were all cases where the potential copyright owners were actually in front of the court. And don't we look at a, counsel, don't we have to look at a successor as if it's the same party? In other words, why don't we look at CAFE as if it is Southern County's, if it's the successor to Southern County? The answer is, Your Honor, you can't end this case because of Ed Neal's testimony that the copyrights remained with Southern County's escrow. There's no showing that Southern County's escrow transferred its copyrights to either General Bank or Stewart. Of course, you had other testimony, too. Before your time runs entirely, I've got effects here in front of me. Can you point me to the language you quoted about that writing has to be contemporaneous? Sure, Your Honor. Clearly says it has to be writing. I mean, that's where we get the Magna Carta quotation. Okay. Your Honor, I think I'm thinking of Kronigsberg talking about effects. Kronigsberg is 16F3, 355, 9th Circuit case. Kronigsberg I may not have here in front of me. Yeah, and it's citing effects. And it says that the effect says it has to be contemporaneous? Yes, sir. Well, it's wrong. At least it seems to be. Kronigsberg seems to be wrong. I mean, unless you can point to me somewhere in the facts that says that, I can't find it on my own. And I confess, can you give me the citation to the jump site for Kronigsberg? I don't have Kronigsberg here in front of me. Yeah, the jump site for Kronigsberg are 16F3, 355, 356, and 357. And the language from Kronigsberg that you're referring to is? No, it's not. It's not valid unless an instrument of conveyance or a note or memorandum of the transfer is in writing and signed by the owner of the rights conveyed or such owner's duly authorized agent. In effects two, we stated that the writing must ensure that the author will not give away his copyright inadvertently and forces a party who wants to use the copyrighted work to negotiate with the creator to determine precisely what rights are being transferred and at what price. The writing should also serve as a guidepost for the parties to resolve their disputes, rather than look to the courts every time they disagree as to whether a particular use of the work violates their mutual understanding. Parties need only look to the writing that sets out their respective rights. To serve these functions... Now, are you still quoting? Is Kronigsberg still quoting from effects? No. Okay, this is now Kronigsberg on its own. But now this is Kronigsberg on its own. To serve these functions, the writing in question must, at the very least, be executed more or less contemporaneously with the agreement  That's what Kronigsberg says. So here, the contemporaneous writing that we have, the underlying agreement between Southern Counties, Estro, and Stewart, actually says no transfer of copyrights. It doesn't transfer anything. So what we have here is a writing that retroactively, more than seven years later, after litigation has commenced, after the discovery cutoff period, after we file a motion for summary judgment, it's purporting to interpret the underlying writing. That's all it does. There's not one shred of testimony here that says Southern Counties, Estro transferred copyrights to Stewart. And if there is, and I want to just address this in closing, Your Honor. If there is such testimony, or if you can interpret such testimony, what you have is conflicting issues of fact that are raised by Stewart's own witnesses. And under the Rabidenko case and the Cambridge Electronics cases in the Ninth Circuit, it's crystal clear. A party cannot create a genuine tribal issue of fact by contradicting themselves. So in answer to one of your earlier questions about is there an issue of fact, if there is one, it's because Ed Neal, the person most knowledgeable, first said no assignment, no transfer. Then he said, well, you know, we got to, and so on. Thank you, Your Honor. Thank you. All right. I have a few points that I'd like to address, and I will pick up with where counsel left off with respect to the issue of creating an issue of fact, that Mr. Neal created an issue of fact himself. I think that counsel has made a fantastic argument to the jury, but it seems to me that this is not an appropriate case for determining a factual question as to whether or not Mr. Neal meant no Southern County's escrow never assigned its copyrights to Stewart when he was asked did Southern County's escrow ever assign any of its copyrights to anybody. I think it's a perfectly valid question in a trial with Mr. Neal on the stand as to what he meant by that, given that on the following page, and I'm looking here at SCR 55 and 56, he is asked, questioned by counsel who argued, were the copyrights assigned to Stewart Title? Answer, they were given to us, yes. And so he then goes on to testify, and it's clear here that he spoke with Pierre Lowe at General Bank and had these conversations. Now, I think it was stated, it was certainly strongly implied, I think it was directly stated that between the bad answers, I'll call them that, and the good answer, there was consultation with counsel. Yes, I was just about to answer that, Your Honor. May I? Yes, please. Yes. Looking at SCR 56 and SCR, I'm sorry, SCR 55 and 56, unless I'm missing something, and I certainly could be, these are consecutive deposition pages 89 and 90 between these two questions. The question, did Southern Counties assign it to anybody, is on page 89, which is SCR 55. And the following question, the specific question about whether or not SCE assigned it to Stewart is on the following page, which is SCR 56, page 90 of the deposition. And the answer is, Your Honor's question, there was no consultation of counsel. And so ---- Now, let me, okay, I want to make sure I understand the foundation for what you're just saying.  The pages run along no indication of recess. Of course, on a deposition, that's not always going to show up. Right. Were you present at that deposition? I was not present at that deposition. Okay. Counsel who was present is here on my side. Well, I don't want to turn this into fact-finding on that question. Okay. But the answer to the question is that ---- Even if there's a recess and counsel talked to the witness, it seems to me that just goes to wait and wouldn't preclude there being an issue of fact. Well, and I would agree with Your Honor in respect to that. It seems it would be a perfect grounds for impeachment, I suppose. However, I guess we'll have to call the attorneys who were present at the deposition because the transfer itself doesn't reflect that there was a break at which the witness could have been admonished by counsel. Now, let me just address quickly this idea of Konigsberg. In Konigsberg, the asinor and the asinine disputed the transfer. And that's made clear in footnote one of the Magnuson case. And so Konigsberg doesn't apply here. There is absolutely no evidence of any dispute. If the burden is on Stuart Title to put on evidence of ownership, we've certainly done so by putting on evidence that there is no dispute between the parties. There's at least evidence sufficient to shift the burden back to the defendants to prove that there is a dispute. And the defendants cannot do that. So your construction of Konigsberg is that when you've got a dispute, the idea that the writing should be more, in the words of Konigsberg, more or less contemporaneous makes sense. When there's no dispute and the only dispute that shows up is as a result of litigation, if you have a writing that shows up as soon as the dispute arises raised by a third party, that's sufficient. More or less. But I guess I would reframe it slightly to say that there needs to be some contemporaneous evidence. If that's the writing, that's fine. But there needs to be some contemporaneous evidence, contemporaneous with the oral transfer of its existence. And here we have that because of the course of conduct of the parties. We have the dissolution of Southern Counties. And let me address that issue quickly. Southern Counties dissolved. They've never disputed that point. The shareholder was General Bank. Upon dissolution, the rights of Southern Counties passed to General Bank as a matter of law. And then when General Bank merges with CAFE, CAFE Bank, the name that is chosen is then the entity that has those rights and the ability to subsequently confirm in writing a prior understanding. As Judge Gould said, I mean, it's still the same entity. It's just transformed in terms of its name. These must be awfully nice forms. Pardon me, Your Honor? I'm trying to figure out why we're fighting over escrow forms. I mean, these must be awfully good forms. Well, in fact, they are good forms. That's exactly the point. They are good forms. Stuart Title has spent Mr. Neal and Stuart Title has spent enormous amounts of resources, time and effort in creating these forms. And as the Court can see from the 23 other forms that have been submitted by the defendants, these forms take lots of different, well, lots of different formats and appearance. And look, and these forms are something that Stuart Title offers to its customers and its clients. And it's important in that respect. Would you characterize them as assorted? The forms, Your Honor? No, I don't think I would agree that they are assorted. Assorted forms. Assorted or assorted? Assorted forms. Assorted forms. Okay.  Assorted, yes. I guess I would agree that they are assorted. You're over time, but if you have one last thought with which you would like to leave us. All right. Thank you very much. I appreciate that. The idea that Stuart Title was not suing on the right forms is really incorrect. Stuart Title sued on the 2003 forms because those are the forms. And it's a very clever argument by the defendants. Stuart Title sued on those forms because those are the forms that the defendant copied virtually identically. Yes, there are differences between the forms, but those are the forms that were sued that were copied virtually identically. And so we would submit here that Stuart Title clearly has the right to sue on whichever forms it deems have been infringed. It may very well be that the 98 forms have been infringed as well. But those are the forms that were copied verbatim by the defendants, and so that's why those forms were sued upon. And so with that, Your Honor, unless there are any other questions, which I'd be pleased to answer. Okay. Thank you very much. Thank you both sides for your argument. Thank you very much. The case of Stuart Title of California v. Fidelity National Credit Company is now submitted for decision, and we're in recess for the remainder of the day. Thank you very much. Thank you.
judges: Fletcher, Gould, Pollak